IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

NEW MEXICO GAS COMPANY,
PUBLIC SERVICE COMPANY OF NEW
MEXICO, and QWEST CORPORATION
d/b/a CENTURYLINK,

      Plaintiffs,

   v.                                                     Civil No. 14-00188 WJ-KBM

BOARD OF COUNTY COMMISSIONERS
OF BERNALILLO COUNTY, NEW
MEXICO,

      Defendant.

**MEMORANDUM OPINION AND ORDER
DECLINING TO EXERCISE SUPPLEMENTAL JURISDICTION AND DISMISSING
PLAINTIFFS' STATE LAW CLAIMS WITHOUT PREJUDICE
and
REQUIRING PLAINTIFFS TO FILE AMENDED COMPLAINT REFLECTING
COURT'S RULINGS**

THIS MATTER comes before the Court upon a Renewed Motion to Dismiss State-Law Claims, or in the Alternative, for Certification to the New Mexico Supreme Court, filed by Defendant Board of County Commissioners of Bernalillo County ("the County" or "Bernalillo County") on May 5, 2014 (**Doc. 36**).[1]  Having reviewed the parties' briefs and applicable law, the Court finds that Defendant's motion is well-taken, and it shall be granted in that Plaintiffs' state law claims in Counts II, III, IV, V and VI are dismissed without prejudice under 28 U.S.C. §1367(c)(1) and (2).

---

[1] This motion amends a previously filed motion to dismiss, Doc. 28.

## BACKGROUND

This lawsuit concerns an ordinance adopted by the County which requires Utilities with facilities and equipment in the public right-of-way of the unincorporated areas of Bernalillo County to execute a Right-of-Way Use Agreement with the County.   The ordinance allows the County to impose on the Utilities a significant increase in the existing fees for the Utilities' use of public rights-of-way.   Plaintiffs filed this lawsuit to enjoin the County from enforcing the ordinance and related resolutions, seeking declaratory and injunctive relief.   Specifically, Plaintiffs New Mexico Gas Company ("NMGC"), Public Service Company of New Mexico ("PNM") and CenturyLink (collectively, "Plaintiffs or Utilities") seek a declaration from this Court that the Ordinance and Resolutions adopted by the Board violate the Telecommunications Act of 1996, 47 U.S.C. §253 and New Mexico law, for the placement and maintenance of Facilities in the public rights-of way.

In the instant motion, the County moves for dismissal of Plaintiffs' claims brought under New Mexico law, or in the alternative, to certify Count II to the New Mexico Supreme Court.

A.   <u>The Ordinance and Resolution</u>

The Ordinance adopted by the Board requires each Utility to pay an allegedly unlawful Application Fee as a condition precedent for filing an application for a Right-of-Way Use Agreement ("Agreement").   Each Utility must submit an application requiring specified information to be provided to the County Right-of-Way Administrator, including detailed mapping and other information.   The Utilities are then required to sign a Right-of-Way Use Agreement, which will include a fee amount, within 90 days of the effective date of the Ordinance or face criminal and civil prosecution.   The Ordinance also requires that Utilities pay an annual franchise fee to the County for the use and occupancy of the public rights-of-way.

Plaintiffs claim that the amount and terms of payment would be individually prescribed by the County, at its discretion, and without adherence to any disclosed criteria or methodology. The Board would also retain discretion to vary these fees between Utilities, to waive certain their fees, and to increase the fees at its sole discretion. The Ordinance provides that, in the event a Utility fails to execute a Right-of-Way Use Agreement, the Utility must remove its facility from the public rights-of-way within a timeframe established by the County, and the County would retain the authority to remove and dispose of facilities that are not removed at the expense of the facility owner.

B.      The Allegations

The Amended Complaint (Doc. 31) contains seven claims for relief. Two of these claims, Counts VI and VII (a state law claim and a federal claim, respectively) are asserted as "alternate" claims for relief. Count I, which is asserted only by CenturyLink is based on federal preemption under the Supremacy Clause and asserts a violation of §253 of the Telecommunications Act. Count VII alleges a federal due process claim under 42 U.S.C. §1983. All of the remaining counts, Counts II, III, IV, V and VI, are founded on state law.

In Count I, CenturyLink seeks a declaration that the Ordinance and Resolutions violate 47 U.S.C. §253 and are preempted by the Supremacy Clause of the United States Constitution. CenturyLink claims that the intended franchise fee has the effect of prohibiting CenturyLink from providing its telecommunications service, in violation of §253, because the intended fee will limit CenturyLink's investment in infrastructure and will restrict its ability to provide competitive services.

Count II asserts that the fees under the Ordinance and Resolutions violate NMSA 1978 §62-1-3 (1909). Plaintiffs allege that the ordinance and resolutions violate New Mexico Statute

§ 62-1-3. Plaintiffs allege that the franchise and other fees under the Ordinance and Resolutions are intended purely as revenue enhancement measures for the county budget and do not constitute "reasonable actual expenses incurred in the granting of any franchise" which they claim the County is limited to recover pursuant to §62-1-3.

In Count III, Plaintiffs allege that the ordinance and resolutions threaten removal of Plaintiffs' facilities and criminal prosecution, and in doing so, usurp the power of the New Mexico Public Regulations Commission ("NMPRC"), and violate the New Mexico Constitution, the New Mexico Public Utility Act, and the New Mexico Telecommunications Act.

Count IV seeks a declaration that the Ordinance is tantamount to an illegal contract and is therefore unenforceable. Section 14 of the Ordinance provides that in the event the franchise fee or any similar fee is declared illegal, unconstitutional or void for any reason by any court or proper authority, Utilities that enter into a Right-of-way Use Agreement shall nevertheless be contractually bound to pay the County such fees, notwithstanding the illegality of the fees. Plaintiffs contend that the Board and the County lack authority to enter into or to enforce, illegal, invalid or unconstitutional contracts.

Count V asserts that the Resolutions which were adopted legislatively by the Board are, by their nature and effect, legally County ordinances subject to NMSA 1978 §4-37-7(A) and (B), and as such, were not passed in accordance with applicable New Mexico law governing ordinances.

Count VI is a claim for alternate relief in the event the Court finds any of the fees under the Ordinance or Resolutions to be lawful and enforceable with respect to the Utilities. In such a case, Plaintiffs ask that the franchise fees be subject to tariffs, as provided under NMSA 1978,

§62-6-4.5, and billed to and recovered from CenturyLink customers in the unincorporated areas of the County.

Count VII is also a claim for alternate relief, requesting a declaration that the fees under the Ordinance and Resolutions are unconstitutionally vague and violate due process under 42 U.S.C. §1983 because there are no standards or guidelines for setting the fees.

The Amended Complaint asserts federal jurisdiction pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1367. The instant motion challenges whether the Court should exercise its jurisdiction over Plaintiffs' state law claims.

## I. Supplemental Jurisdiction

Congress granted statutory authority to district courts to hear claims that form "part of the same case or controversy" as the claims on which original federal jurisdiction is based. 28 U.S.C. § 1367(a); *see City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173, 118 S.Ct. 523, 139 L.Ed.2d 525 (1997), cited in *Estate of Harshman v. Jackson Hole Mountain Resort Corp.*, 379 F.3d 1161, 1164 (10th Cir. 2004). A claim is part of the same case or controversy if it derive[s] from a common nucleus of operative fact." *City of Chicago,* 522 U.S. at 165.

Defendant does not offer much argument on this initial threshold question. The Court is inclined to view Plaintiffs' state law claims as arising from a common nucleus of operative fact, those facts pertaining to the Ordinance and Resolutions adopted by the Board and the various challenges to the Ordinance and Resolutions raised by Plaintiffs. The question here is whether this Court should address all of these challenges, or decline to take on the state law claims.

## II. Whether the Court Should Exercise Supplemental Jurisdiction

The Court assumes that it has supplemental jurisdiction over Plaintiffs' state law claims, pursuant to 28 U.S.C. §1367. Supplemental jurisdiction, however, has been consistently

recognized as a doctrine of discretion, not a doctrine of right. *Baker v. Board of Regents of State of Kan.*, 991 F.2d 628 (10th Cir. 1993) (citing *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726-727 (1966)). District courts are statutorily authorized to decline supplemental jurisdiction over a state law claim if:

> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

*Gold v. Local 7 Food & Commercial Workers Union*, 159 F.3d 1307, 1310 (10th Cir. 1998) (exercise of supplemental jurisdiction is discretionary); see 28 U.S.C. § 1367(a).

A.  <u>Whether State Law Predominates</u>

Defendant argues that subsections (1) and (2) both provide reasons for the Court to decline supplemental jurisdiction in this case. First, Defendant contends that Plaintiffs' state law claims predominate over the two federal claims, noting that the federal claim in Count I was asserted by only one Plaintiff, and the other federal claim, Count VII, was added in the Amended Complaint as an "alternate" claim for relief. Supplemental jurisdiction under § 1367(c)(2) is intended to promote economy by ensuring that one forum resolves all claims arising out of a "common nucleus of operative fact." *Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 789 (3d Cir. 1995).

"The 'substantially predominate' standard is not satisfied simply by a numerical count of the state and federal claims the plaintiff has chosen to assert on the basis of the same set of facts. An analysis more sensitive to the relevant interests is required." *Borough of West Mifflin,* 45

F.3d at 789.  Predomination also refers to the type of the claim.  *Lindsay v. Gov't Emps. Ins. Co.*, 448 F.3d 416, 425 (D.C. Cir.2006) ("Predomination under section 1367 (c)(2) relates to the type of claim and here the state law claims essentially replicate the FLSA claims—they plainly do not predominate").

Plaintiffs propose that the same facts and legal issues in both federal claims also underlie Counts II through IV.  However, the Court finds that Plaintiffs overreach in making that statement.  Section 253 of the federal Telecommunications Act, the subject of Count I, preempts any State or local regulation that prohibit or "ha[s] the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service."  The question to be resolved in Count II is whether the fees imposed by the new ordinance are reasonable actual expenses; the question in Count III is whether state statutes, which essentially prohibit utilities and telecommunication carriers from abandoning its facilities without first obtaining permission from the NMPRC, and providing another service in its place.  Count IV seeks a declaration as to whether the County can force the Utilities into being contractually bound to pay the fees should the Court declare the ordinance and resolutions to be constitutionally sound.  The alleged conduct described in Counts II through IV are specific violations of various state statutes that may or may not have the effect of prohibiting a telecommunication carrier from providing service, in violation of § 253,[2] but they do not replicate the federal question in Count I.  Whether the ordinance and resolutions at issue ultimately violate §253 by prohibiting the Utilities from providing their services is a different question from whether they violate the state statutes in Counts II and III, and whether the imposition of fees is an illegal contract, as alleged in Count IV.

---

[2]  Even so, a ruling by the Court that §253 was violated would favor only CenturyLink, since none of the other Plaintiffs have asserted this claim.

In support of the argument that the same facts and issues in Count I also underlie Counts II through IV, Plaintiffs cite several cases in this circuit that have addressed challenges to §253. Plaintiffs also attach two cases from this federal district where the court concluded that the ordinances in question were preempted by §253 of the Telecommunications Act. These cases are persuasive examples of decisions on the merits of claims asserted under §253. However, no state law claims were alleged in either of those cases, and so they are no help at all on the question of whether the Court should exercise supplemental jurisdiction over state law claims alleged in this lawsuit.[3]

The main problem with Plaintiffs' argument that the state law issues do not predominate is that it conflates the commonality of facts, which is part of the threshold inquiry in determining the existence of supplemental jurisdiction under §1367, with the separate question of whether such jurisdiction should be exercised. The general facts concerning the ordinance and resolutions may be common to all of Plaintiffs' claims, but the Court does not agree with Plaintiffs that the *issues* raised in the state law claims replicate the issues raised in either of the federal claims—one which is brought by only one Plaintiff, and the other which is an alternate claim for relief. *Cmp. Bavand v. OneWest Bank FSB, C12-0254JLR*, 2012 WL 1884668, at *4 (W.D. Wash. May 22, 2012) ("Because [Plaintiffs] state causes of action require consideration of similar facts and *issues* as her federal claim, her state law claims cannot be said to substantially predominate over her federal claim.") (emphasis added).

Plaintiffs also argue that the facts underlying Counts II through IV are subsumed in the §1983 due process claim in Count VII, Plaintiffs' alternate federal claim for relief. The Court

---

[3]   *Qwest Corp. v. City of Santa Fe*, Case No, 10cv00617-RB/KLM (D.N.M. 2008), Findings of Fact and Conclusions of Law" issued December 3,2013 (Doc. 484) (attached as Exhibit A); *Board of County Comm'rs of Grant County v. Qwest Corp.*, Case No. 98ov01354-JC/LCS (Mem.Opin. & Order), June 26,2000 (Doc. 66) (attached as Exhibit B).

fails to see the connection. Whether the County failed to express a methodology or standard for setting the new fees—which concerns *how* the County came up with the fee amounts—seems to have little to do with whether the state statutes referenced in Counts II and III were violated, or whether unilaterally declaring the fees to be a contractual obligation is unenforceable.

Plaintifs acknowledge that Counts V and VI are less directly intertwined with the federal claims, but nevertheless insist that these claims should not really factor into the "substantially predominate" analysis. Count V is a state law claim which asserts that the Board did not follow the proper procedure for the adoption of ordinances, and Count VI is also a state law claim, pled in the alternative, seeking a declaration that if the Ordinance and associated fees are upheld, that the Utilities may bill the fees to the consumer. Plaintiffs point out that a resolution in their favor on Counts I, II through IV or VII, would eliminate the need to consider either Counts V or VI. Thus, Plaintiffs argue that Counts V and VI do not "substantially predominate" because the Court would not need to reach either of them if the Court ruled in Plaintiffs' favor on Count I or the other state law claims. This conclusion is unsound. Whether or not the Court would ultimately need to address Counts V and VI, they presently remain as state law claims the Court may have to address should the Court exercise supplemental jurisdiction over them. There is no reason to exclude them from the analysis.

In determining whether to exercise supplemental jurisdiction, district courts should consider the interests of judicial "economy, convenience, fairness, and comity" when deciding whether to exercise supplemental jurisdiction. *Estate of Harshman v. Jackson Hole Mountain Resort Corp.,* 379 F.3d 1161, 1164 (10th Cir. 2004); *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). In deciding whether to exercise jurisdiction under §1367 in this case, the Court focuses on whether it appears that the state issues raised in the case substantially predominate,

"whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought," in which case the state claims "may be dismissed without prejudice and left for resolution to state tribunals." *Gibbs,* 383 U.S. at 726-27. Plaintiffs' claims are top-heavy with state law issues. The federal preemption claim in Count I affects only one Plaintiff, and the §1983 claim which was added later is a claim for alternative relief. There is some merit, although no proof, to Defendant's contention that Plaintiffs are manipulating the claims in their lawsuit in order to achieve federal jurisdiction. In spite of its two federal claims, this lawsuit is a state law case at heart. The claims in the amended complaint have been asserted in such a way as to require the Court, should it decide to exercise supplemental jurisdiction, to address the state law claims first in order to resolve the case for all the parties: CenturyLink's federal claim asserted under §253 has no relevance for NMGC and PNM. Thus, NMGC and PNM would require a ruling on the state law claims separately before the Court would be confronted with the only other federal claim asserted, in the alternative, against all Plaintiffs.

The Court concludes, based on the foregoing analysis, that state law issues substantially predominate in this case, and that they do not form part of the Court's consideration of the federal claims.

B.      Whether State Law Issues are Novel or Complex

As an additional ground for urging the Court to decline to exercise supplemental jurisdiction, Defendant contends that the complaint raises multiple complex and novel issues of state law, focusing primarily on Count II in which Plaintiffs allege that the franchise and related fees violate §62-1-3. Defendant contends that Count II entails construction of a provision of a New Mexico statute that has not yet been interpreted by a New Mexico appellate court. For this reason, Defendant requests that the Court certify Count II to the New Mexico Supreme Court.

Plaintiffs counter that the issues raised in the state law claims (specifically, Count II) are neither novel nor complex. They note in particular that the provision at issue, §62-1-3, has already been addressed in several cases involving challenges under §253, and include several citations to such cases. These cases are not factually pertinent to Count II, and so the question in Count II may be considered a new issue which the New Mexico state courts have not specifically addressed. However, Count II asks no more of this Court in interpreting state statutes than do the other state law claims in the amended complaint. Thus, the Court finds that the state law issues raised in Counts II through VI are sufficiently novel and complex to decline supplemental jurisdiction over these claims, but that there is no basis to certify Count II to the New Mexico Supreme Court.

## CONCLUSION

In sum, the Court finds and concludes that state law issues substantially predominate in this case, and that they do not form part of the Court's consideration of the federal claims.

The Court also finds and concludes that the state law issues raised in Counts II through VI are novel and complex enough to decline supplemental jurisdiction over these claims, but that there is no basis to certify Count II to the New Mexico Supreme Court.

The Court rejects Plaintiffs' contention that the state law claims are so closely tied to questions in the federal claims that the Court should exercise supplemental jurisdiction over those claims. Certainly there are situations in which a state claim is so closely tied to questions of federal policy that the argument for exercising supplemental jurisdiction is "particularly strong." *Gibbs,* 383 U.S. at 727. In this case, however, each one of the state law claims calls for an analysis of New Mexico law, with most of the state law claims requiring the Court to interpret provisions of state statutes according to New Mexico law. This analysis would have no bearing

11

on federal policy.  As mentioned previously, a finding of preemption under §253 does not resolve any claims for two out of three Plaintiffs, and the state law claims would still require separate analysis on their own grounds.

**IT IS THEREFORE ORDERED** that Defendant's Renewed Motion to Dismiss State-Law claims, or in the Alternative, for Certification to the New Mexico Supreme Court  **(Doc. 36)** is hereby GRANTED for reasons described in this Memorandum Opinion and Order, in that Plaintiffs' state law claims in Counts II, III, IV, V and VI are dismissed without prejudice under 28 U.S.C. §1367(c)(1) and (2);

**IT IS FURTHER ORDERED** that Plaintiffs shall file an amended complaint consistent with the Court's rulings herein **on or before Monday, June 23, 2014**.

                                                                          _____
                                                                          UNITED STATES DISTRICT JUDGE