**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**
_____

NEW MEXICO GAS COMPANY,
PUBLIC SERVICE COMPANY OF NEW
MEXICO, and QWEST CORPORATION
d/b/a CENTURYLINK,

        Plaintiffs,

        v.                                  Civil No. 14-00188 WJ-KBM

BOARD OF COUNTY COMMISSIONERS
OF BERNALILLO COUNTY, NEW
MEXICO,

        Defendant.

## <u>MEMORANDUM OPINION AND ORDER DENYING PLAINTIFFS'<br>FED.R.CIV.P.12(C) MOTION FOR JUDGMENT ON COUNT I</u>

THIS MATTER comes before the Court upon Plaintiffs' Fed.R.Civ.P.12(C) Motion for

Judgment on Count I of the Second Amended Complaint, filed July 22, 2014 (**Doc. 48**). Having

reviewed the parties' briefs and the applicable law, the Court finds that Plaintiffs' motion is not

well-taken. Accordingly, it is DENIED.

## BACKGROUND

This lawsuit concerns an ordinance and resolutions adopted by Defendant Board of

County Commissioners of Bernalillo County ("County") which require utilities with facilities

and equipment in the public right-of-way of the unincorporated areas of Bernalillo County to

execute a Right-of-Way Use Agreement with the County and, as part of such agreement, to pay a

right-of-way use fee to compensate the County for its reasonable actual expenses incurred in

connection with granting the right-of-way. Plaintiffs New Mexico Gas Company ("NMGC"),

Public Service Company of New Mexico ("PNM") and CenturyLink (collectively, "Plaintiffs or Utilities") filed this lawsuit to enjoin the County from enforcing the ordinance and related resolutions, seeking declaratory and injunctive relief.

Ordinance 2014-5 ("the Ordinance") requires each Utility to submit an application requiring specified information to be provided to the County Right-of-Way Administrator, including detailed mapping and other information.    Under §5(A) of the Ordinance (see Ex. A), the Utilities are then required to sign a Right-of-Way Use Agreement, which will include a fee amount, within 90 days of the effective date of the Ordinance.   The Ordinance also requires that Utilities pay an annual franchise fee to the County for the use and occupancy of the public rights-of-way.   Plaintiffs claim that the amount and terms of payment would be individually prescribed by the County, at its discretion, and without adherence to any disclosed criteria or methodology. Section 7 of the Ordinance allows the Board to waive certain fees, and to increase the fees at its discretion.   The Ordinance provides that, in the event a Utility fails to execute a Right-of-Way Use Agreement, the Utility must remove its facility from the public rights-of-way within a timeframe established by the County, and the County would retain the authority to remove and dispose of facilities that are not removed at the expense of the facility owner.   Utilities that do not comply with the requirements set forth in the Ordinance face criminal penalties and civil prosecution. Ex. A, § 11.

The Court recently granted Defendant's motion to dismiss Plaintiffs' state-law claims, dismissing them with prejudice.  *See* Doc. 42 at 12.   The Court also allowed Plaintiffs to file an amended complaint consistent with the Court's rulings, which Plaintiffs have done.  *See* Doc. 45 ("Second Amended Complaint").[1]   As a result of the Court's rulings, what remains in this case

---

[1]   The original complaint contained only one federal claim, a preemption claim under 47 U.S.C. §253 by Plaintiff CenturyLink.   Plaintiffs added a second federal claim, the unconstitutional "void for vagueness" claim in an

are Plaintiffs' two federal claims, renumbered in the Second Amended Complaint as Counts I and II.   Count I seeks a declaration by this Court that the Ordinance is unconstitutionally vague and violates due process as enforced pursuant to 42 U.S.C. §1983.   In Count II, CenturyLink seeks a declaration that the Ordinance and Resolutions violate 47 U.S.C. §253 and are preempted by the Supremacy Clause of the United States Constitution.   CenturyLink claims that the intended franchise fee has the effect of prohibiting CenturyLink from providing its telecommunications service, in violation of §253, because the intended fee will limit CenturyLink's investment in infrastructure and will restrict its ability to provide competitive services.   This motion concerns only Count I.

## DISCUSSION

Count I is a facial and as-applied challenge to the constitutionality of the Ordinance.[2] Under § 7(A) of the Ordinance, Utilities are required to pay an "annual use fee" to the County, formalized in a "specific Right-of-Way Use Agreement" for the "use and occupancy of the County property and its right-of-way."   Sections 5(A) & (B) of the Ordinance establish a system where the Utilities have a 90-day window in which to "negotiate and execute" the Right-of-Way Use Agreement" ("Use Agreement").   Plaintiffs contend that the requirement in the Ordinance that Utilities must "negotiate" an annual fee within 90 days or be subject to criminal penalties and forfeiture, where no standards are identified by which these fees are to be determined, is unconstitutionally vague.

---

Amended Complaint (Doc. 31), filed after Defendants moved to dismiss the state law claims on jurisdictional grounds.  The "void for vagueness" claim is now Count I of the current Second Amended Complaint, and which is the subject of the instant motion .  Doc. 45.   Plaintiffs intend to re-file the state law claims in Bernalillo County District Court.  Doc. 48 at 3, n.3.

[2]  A "facial" vagueness challenge applies to everyone the statute or regulation purports to reach; an "as applied" challenge applies to the vagueness of the statute or regulation as to the individual challenging it.  *See Doctor John's, Inc. v. City of Roy,* 465 F.3d 1150 (10th Cir. 2006).

The Utilities compare the provisions of the Ordinance to the one-time permit fees in Resolution AR 2013-52, imposed by the County as "design review fees" for the Utilities' construction projects.  *See* Ex. C (attached to Amended Compl.).    Under AR 2013-52, the County imposes specific fees for certain ranges of construction costs.  For example, for projects with total construction costs under $250,000, AR 2013-52 imposes a $750 fee; for projects with costs over $250,000, a fee of 1.5% of the estimated cost is applied.   These one-time permit fees may be waived if the "negotiated" annual fee in the Use Agreement is high enough.  *See* Ex. A, Ordinance, §7(C)(1).   While Plaintiffs consider these design review fees to be excessive, they do not consider AR 2013-52 to be either vague or lacking in certainty, in contrast with the annual fee requirement for the Use Agreement, where Plaintiffs claim there is no standard of methodology for determining the annual fee where such fees may be unilaterally increased by the County.  *See* §7(D) ("Any fees applicable under this article shall be reviewed from time to time by the county manager and any changes to these fees shall be made by resolution of the [Board]").

Defendants contend that Plaintiffs' attempt to obtain judgment on Count I based on the pleadings is misplaced, and is actually a thinly veiled substantive challenge to the County's imposition of fees associated with Plaintiffs' use of the right-of-way.   They note that the issue merits at least discovery and a development of facts, considering that the Ordinance is a lengthy ten pages and cites to several state statutes.    Defendants also claim that, contrary to Plaintiffs' contention, the Ordinance is clear as to what conduct is prohibited, in that it follows the guidance set forth in state statutory and federal case law, and that Plaintiffs actually possess extensive information provided by the County as to the basis and calculation of the County's incurred costs.

## I.      Legal Standard

A motion filed under Federal Rule of Civil Procedure 12(c) is evaluated under the same standard applicable to motions filed under Rule 12(b)(6).   *See Colony Ins. Co. v. Burke,* 698 F.3d 1222, 1228 (10th Cir. 2012).   In considering the motion, the Court must "accept all facts pleaded by the non-moving party as true and grant all reasonable inferences from the pleadings in favor of the same."   *Id.*

A law is "void for vagueness" if it does not clearly define its prohibitions.   *Doctor John's Inc. v. City of Roy,* 465 F.3d 1150, 1157 (10th Cir. 2006).   A provision is unconstitutionally vague if it "fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits," or "if it authorizes or even encourages arbitrary and discriminatory enforcement."   *Hill v. Colorado,* 530 U.S. 703, 732 (2000); *see also Doctor John's Inc.,* 465 F.3d at 1158.    The degree to which the Constitution tolerates vagueness depends on: whether the regulation is strictly an economic regulation; whether the regulation provides for only civil penalties; whether, if the regulation provides for criminal penalties, the regulation contains a scienter requirement; and whether the law threatens to inhibit Constitutional protections.   *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 498-99 (1982).

## II.     Whether Conduct Is Ill-Defined

Plaintiffs contend that the Ordinance is unconstitutionally vague because it does not provide or give notice to the Utilities of what is required for them to maintain their facilities in the rights-of-way.   However, at the heart of the issue is the lack of a specific fee amount in the Ordinance, unlike with AR 2013-52 which sets specific design review fees for certain levels of projects.   This, as Defendants note, is not the kind of "conduct" that must be well-enough

defined to withstand a constitutional challenge.    The cases relied on by Plaintiffs bear out Defendants' point. *See, e.g., City of Chicago v. Morales,* 527 U.S. 41 (1999) (holding that anti-loitering ordinance was vague because it failed to provide any standards by which an individual would know that he remained in one place "with no apparent purpose"); *Kolender v. Lawson,* 461 U.S. 352, 361 (1983) (ordinance requiring presentation of "credible and reliable" identification to police officers encouraged arbitrary enforcement by failing to describe with sufficient particularity what suspect must do to satisfy the statute and placed "complete discretion" in hands of the police to make that determination); *Doctor John's Inc.,* 465 F.3d at 1150 (ordinance requiring license as sexually oriented business where store stocked a significant or substantial amount  of sexually explicit material was not "void for vagueness").

The challenged lack of specific guidelines for fee amounts does not come within a constitutionally-proscribed vagueness.   The Ordinance sets out to impose charges, by its express terms, to "compensate for all of the County's reasonable actual expenses incurred for use of County right-of-way."   Ex. A (Ordinance) at 2, lines 7-10.   This  language is directly opposite to the kind of language in statutes that have been struck down as unconstitutionally vague, as referenced in one of the cases cited by Plaintiffs. *See Giaccio v. State of Pennsylvania,* 382 U.S. 299, 400-01 (1966) (striking down statute as unconstitutionally vague where statute allowed juries to assess undefined "costs" on acquitted defendants "without any legally fixed standards"). Moreover, it is unfair and inappropriate to compare the set fees included in AR 2013-52, which bases design review fees on the cost of construction projects, with reasonable costs incurred by the County in maintaining public rights-of-way that are occupied by public utilities.

**III.    Whether Ordinance Lacks Standard or Methodology In Assessing Fees**

6

Plaintiffs also claim that the Ordinance is unconstitutionally vague because there are no standards or methodology identified by which the fees are to be determined.   This is not so. While a specific dollar amount is not contained in the Ordinance, the Ordinance states that the basis for the fees is the County's "reasonable actual expenses" in granting the rights-of-way. *See, e.g., Qwest Corp. v. City of Santa Fe,* Civil No. 10-0617 RB/KBM, slip op. at 17 (D.N.M. filed Dec.. 2, 2013) (addressing "costs to review permit application, issue permits," and mapping location of facilities).[3]   Plaintiffs are adequately apprised of the reason for the fee imposition as well as the factors that would go into negotiating a certain amount.   This is considerably different from the situations in the cases cited by Plaintiffs.  *Cmp., e.g., Clear Channel Outdoor, Inc. v. City of St. Paul,* 2003 WL 21857830, *7 (D. Minn. 2003) (holding that ordinance imposing different fees for inspecting off-site billboards was unconstitutionally vague because it left "open to the unbridled discretion of the City agent inspecting the sign" whether or not a fee should be imposed); *Cable Alabama Corp. v. City of Huntsville, Ala.,* 768 F.Supp. 1484, 1507 (N.D. Ala. 1991) (striking down regulation that allowed for "open-ended, unguided and unstructured decision-making process by defendants").

In its reply, Plaintiffs take issue with the County's reliance on *Maynard v. Cartwright,* 486 U.S. 356, 361 (1988).   In *Maynard,* the court struck down a law that allowed juries to find aggravating circumstances where the defendant's conduct was "especially heinous, atrocious, or cruel," holding that such language was impermissibly vague.  *Id.* at 363-64.    However, the vagueness of the conduct described in *Maynard* is hardly comparable with the computation of a "reasonable fee."   Individuals may differ as to *what* conduct is "especially heinous, atrocious, or cruel," but the Ordinance here seeks to impose a fee based on largely empirical standards.

---

[3]   In *Qwest,* the Court specifically found that "it would be appropriate to include the costs incurred by the City due to road degradation in a complete cost assessment."  *Id.* at 19.

Plaintiffs' complaint is that they do not know the exact amount at this point, until at least a Use Agreement is executed and the County's costs can be fairly assessed at relevant time, but the fact that the exact dollar amount cannot be clarified until some later point is insufficient to find that the Ordinance is unconstitutionally vague.

In this case, Plaintiffs cannot say that the County unilaterally gets to decide whether a fee will be imposed, or that the amount is open-ended, unguided and unstructured.   The Ordinance does not vest the sort of "virtually complete discretion" that has formed the basis for facial vagueness attacks.  *See Kolender v. Lawson*, 461 U.S. 352, 358 (1983), cited in *Doctor John's, Inc. v. City of Roy*, 465 F.3d 1150, 1158 (10th Cir. 2006).   Here, the Utilities know that they *will* be paying a fee, and the amount will be guided by the parties' negotiations as well as by the County's "reasonable" costs incurred in permitting Utilities to access public rights-of-way.   As Defendants note, it is not practical for the County to set forth a specific dollar figure in the Ordinance itself, as the County's actual expenses change over time.

Defendants point out that right-of-way use fees are expressly authorized by state statute and comport with case law in this circuit.  *See* NMSA 1978 §62-1-3 (authorizing counties to permit use of public rights-of-way by utilities and telecommunications providers and to "impose charges for reasonable actual expenses incurred in the granting of any franchise pursuant to this section"); *Bd. of County Comm'rs of Grant County v. Qwest Corp.*, 169 F.Supp.2d 1243, 1251 (D.N.M. 2001) (finding that county was not precluded by state law from imposing a User Fee for managing the rights-of-way, where the amount of fee was directly related to the county's expenses incurred in managing the actual physical use of the public right-of-way).   In *Qwest Corp. v, City of Santa Fe*, United States District Court Judge Robert Brack found that "counties

are limited to imposing fees designed to recover their costs," and discussed in some detail, the actual costs incurred by Santa Fe in its management of that City's rights-of-way.[4]

As Defendants note, Plaintiffs have not been left in the dark because they have already been provided with information about sources and amounts of actual expenses associated with rights-of-way.  However, Plaintiffs do not acknowledgement the extensive negotiations between the Plaintiffs and the County leading up to the adoption of the Ordinance, during which the County shared substantial information with Plaintiffs regarding the basis for and calculation of the County's "reasonable actual expenses" in granting the rights-of-way.   Also, according to Defendants, Plaintiffs' participation in negotiations has resulted in their receipt of extensive public records information about the County's actual costs that form the basis of the fees imposed by the Ordinance.   Some of this information has been provided by Plaintiffs themselves as attachments to the Second Amended Complaint. *See, e.g.*, Ex. D (County Financial Analysis Form and ¶¶52-54 of Sec. Am. Compl. (citing cost figures provided by the County for shortened road life due to utility cuts, improvement of unpaved roads, expenses associated with capital projects and operational expenses).  The Court agrees that this information is directly relevant to the constitutional vagueness inquiry, and that it belies Plaintiffs' argument that the Ordinance is devoid of any standards or methodology by which the fees are imposed.   Plaintiffs decry the fact that they are "left to themselves" to "cobble together information" through negotiations, inspection of Public Records Act requests and other methods to determine their annual fee.  Doc. 58 at 7.   The Court has some difficulty viewing Plaintiffs' situation as burdensome.   Plaintiffs

---

[4]  Plaintiffs mention cases from this circuit that have struck down revenue-generating fees under §253 that were imposed on telecommunications carriers, where those fees bore no relation to the costs caused by the carrier's use of the public rights-of-ways.  *See* Doc. 48 at 2, n.2.  However, those cases have nothing to do with whether the ordinance authorizing the imposition of those fees were void for vagueness.  Should the Utilities have any grievance regarding the *amount* of the fees imposed on them by the County, they would be free, as the plaintiffs have done in the cases they cite, to follow up their grievances with court action.

in this case are public gas, electric and telecommunications companies which have the financial means and sophisticated manpower resources to navigate through bureaucratically-created documentation to obtain the information they need**.**

## IV.   Whether the Ordinance is a Penal Statute

Plaintiffs disagree with Defendants' characterization of the Ordinance as an economic regulation, arguing that the County is not an administrative body and has not been given authority to regulate the utilities.   Plaintiffs point to the New Mexico Public Regulation Commission ("NMPRC") which is the exclusive regulatory body for the Utilities.   *See* N.M. Constitution Art. XI, Sec. 2 (the NMPRC "shall have responsibility for regulating public utilities, including electric natural gas and water companies. . . including telephone, telegraph and information transmission companies. . . in such manner as the legislature shall provide." However, the Court does not view the County's imposition of fees as an overthrow of the NMPRC's authority.   The authority conferred on the NMPRC and the authority of the County in the Ordinance have distinct purposes: the NMPRC's regulatory authority over utilities has nothing to do with the County's right to recoup its expenses incurred in providing rights-of-way.

Plaintiffs also insist that the Ordinance is a penal statute because it provides that a violation of the Ordinance is punishable "by a fine of not more than $300 or imprisonment for not more than 90 days or both, per violation."   Section 11 of the Ordinance further states that "[t]he County, in its sole discretion, may require an unauthorized user or occupier of county property or its right-of-way to remove any facilities unlawfully placed in the right-of-way." Plaintiffs point out that as Utilities, they have the statutory right to occupy the public rights-of-way.   Plaintiffs premise this authority on NMSA 1978, §62-1-2 (1909), which states that utilities are "authorized to place their pipes, poles, wires, cables, conduits, towers, piers, abutments,

stations and other necessary fixtures, appliances and structures, upon or across any of the public roads, streets, alleys, highways, and waters in the state subject to the regulation of the county commissioners and local municipal authorities."

Plaintiffs claim that the Utilities' failure to sign a Use Agreement in connection with occupying the rights-of-way would not constitute trespassing "but for the Ordinance requirement" they they sign the agreement or face criminal penalties and civil forfeiture. However, Plaintiffs seem to ignore the language of the very statute (§62-1-2) which they claim affords them authority to occupy rights-of-way.    That language conditions the Utilities' authority to occupy rights-of-way "subject to the regulation" of the county and local authority. Thus, the Ordinance is not at odds with the Utilities' statutory right to occupy rights-of-way, but is expressly provided for as a conditional term, and the Ordinance does not by itself introduce new criminal and civil penalties for the Utilities, contrary to Plaintiffs' contentions.  Doc. 58 at 11.

Plaintiffs compare the instant situation to one in *Bokum Resources v. New Mexico Water Quality Control Commission,* 93 N.M. 546 (1979).   The subject regulations in that case required persons who discharged toxic pollutants to submit a discharge plan to the Director of the Environmental Improvement Division for approval, and which defined "toxic pollutants" as contaminants that will, "on the basis of information available to the Director or the Commission, cause death," or other dire results.   The court found that the regulations were unconstitutionally vague, since the discharger's acts were to be judged, not by what he could read in print about the standards, but by "information available to the Director or the Commission."   The court further found that "a penal statute or regulation which either forbids or requires the doing of an act in terms so vague that men of common intelligence must guess at its meaning and differ as to its

application lacks the first essential of due process of law." *Id.* at 550.  This is not the same kind of situation, by far.   The Utilities know they are subject to a County-assessed fee for reasonable costs if they want to occupy public rights-of-way, and thus the imposition of a fee will not be arbitrarily or discriminatorily enforced.   They also know that the fee will be based on available empirical and documented information at the time the fee is assessed and that the failure to pay the fee would render them subject to a fine which is subject to a maximum amount or imprisonment which is subject to a maximum amount of time, per violation.

Plaintiffs recognize that one of the factors the courts consider to determine constitutional vagueness is whether the regulation is strictly an economic regulation.  *See CMR D.N. Corp. & Marina Towers Ltd. v. City of Phila.,* 703 F.3d 612, 632 (3d Cir. 2013) ("to find an economic civil statute void for vagueness, it must be so vague as to be "no rule or standard at all"); *U.S. v. Gaudreau,* 860 F.2d 357, 360 (10th Cir. 1988) (degree of specificity which Constitution demands depends on nature of statute; criminal statutes "must be more precise than civil statutes because the consequences of vagueness are more severe"); *Monserrate v. N.Y. State Senate,* 599 F.3d 148, 158 (2d Cir. 2010) ("[l]aws with civil consequences receive less exacting vagueness scrutiny.").   The Ordinance at issue is sufficiently precise as to the basis for the fee and the contours of the possible fines and consequences for violation of the Ordinance, that even if the Ordinance could be considered penal, it contains an ample degree of specificity to preclude a finding that it is constitutionally vague either facially or as-applied.

## CONCLUSION

In sum, the Court finds and concludes that Plaintiffs' challenge to the Ordinance in Count I has no merit.   The Ordinance is essentially an economic regulation with sufficient information and specificity to provide people of ordinary intelligence a reasonable opportunity to understand

what conduct it prohibits, and does not encourage arbitrary and discriminatory enforcement. The Court also finds and concludes that the Ordinance does not expand the criminal law in any way, given that the Utilities' authority to occupy public rights-of-way is subject to the regulation of county commissioners and local municipal authorities. Moreover, even if the Ordinance could be considered a penal statute, the Ordinance is not unconstitutionally vague. The criminal consequences are set forth precisely and specifically with ample notice to those who would be in violation of the Ordinance.

**THEREFORE,**

**IT IS ORDERED** that Plaintiffs' Fed.R.Civ.P.12(C) Motion for Judgment on Count I of the Second Amended Complaint (**Doc. 48**) is hereby DENIED for reasons described in this Memorandum Opinion and Order.

_____
UNITED STATES DISTRICT JUDGE